Good morning. We will now hear the case of Burri Law v. Skurla. Good morning for you. Good afternoon for me, Your Honors. My name is Jamie Mayrose. I represent Plaintiff Appellant Mr. Burri and his law firm. I would like to reserve five minutes for rebuttal. Thank you. May it please the court. We are asking respectfully this court to overturn the trial court's decision when it granted the motions for dismiss filed by all three defendants, Block, Skurla and Burnett, requesting the dismissal for personal jurisdiction. We believe the court erred in that ruling and that we were able to show specific jurisdiction in the allegations of the First Amendment complaint. To the extent that the court is not satisfied that we have shown specific personal jurisdiction here, we would ask the court allow us to conduct limited discovery designed to flesh out the jurisdictional elements that we believe do exist here. The 2014 Supreme Court case of Walden v. Fiore tells us that the strength of the defendant's connection to a forum is largely a function of the nature of the tort. For today's purposes, I want to focus on two torts. We have the tort of defamation and we have the tort of intentional interference with contractual relations. With respect to defamation, we have numerous cases we can look to. We can look to Keaton v. Hustler. We can look at Calder v. Jones. In analysis of defamation, and specifically in those cases, the analysis of libel, which is simply written defamation, one of the key elements is publication to a third party. Does this case say whether we're talking in the complaint libel or slander and does it matter? For Arizona purposes, it does not matter. Defamation is treated the same. One of the causes of action in Arizona is actually defamation per se, and that applies to written or oral, so libel or slander. They're all the same thing under Arizona law. Go ahead. And Keaton and Calder both tell us that where the defamation occurs is where you have a proper forum. And as shown in the amended complaint, and as I'll discuss further, defamation occurred in Arizona. It occurred other places, but it occurred also in Arizona. And for those reasons, we think for certain we have specific jurisdiction with respect to defamation. The second cause of action I want to bring the Court's attention to is the intentional interference with contractual relationships. Now, this necessarily involves looking at the contract, and there are two parties to the contract. You have Mr. Burry and his law firm, who are residents of Florida, and you have clients of the law firm, the Aparchy of Phoenix, a nonprofit that is located in Arizona. And when looking at the tort of intentional interference, you have to first establish that there is a relationship. You have to first show that there's a contract, and we've alleged that in the complaint. Evidence will show that. The contract was actually entered into in Arizona for work to be performed both in Arizona and in Florida, and ultimately resulted in litigation being filed in Arizona District Court. And one could argue then that the performance of that contract at that point in time becomes mainly based in Arizona. You also have a claim for interference with respect to contractual relations, and that seems much weaker in terms of personal jurisdiction in Arizona. I agree. I think that, to be fair, we don't know all the locations that are all the parties that the defendants have engaged in defamation to. You will note that we do cite to an Arizona case, and I believe it's a restatement regarding the single publication rule, that there may be defamation in many other states. And, in fact, we do have other clients that terminated their relationship with Mr. Burry in other jurisdictions. But because of the single publication rule— Now, I was asking about interference with respect to contractual relations. Are we just done with that now? Oh, I was sorry. I was going to follow up there. Oh, okay. It would be my argument that we don't need to go into every single state where, because of the defendant's actions, clients have left the law firm of my client. And so we are seeking to get appendant jurisdiction from the district court over those claims as well. That issue was not raised in the underlying case because of the personal jurisdiction issue. So, basically, for current purposes, you maintain that we should be looking at the defamation and the intentional interference claims? I do, Your Honor. I think we need to first overcome the hurdle of jurisdiction, and I think we do that with specific jurisdiction, and we do that with those two claims. So when looking at the tort of intentional interference, you have the location of the client, so the two parties to a contract. So Arizona is where our client was located. The relationship between the Aparchy of Phoenix and Burry Law was terminated in Arizona while Mr. Burry was located in Arizona for work. And it's undoubtedly the effect of what they wanted, which was to stop an Arizona litigation. That effect happened, and that effect was specific to Arizona and specific to the form of Arizona. So, if we agreed about Skirla, what about Latch and the other defendants, as to whom the alleged connections to Arizona seem much weaker? So, obviously, the wrongful conduct wasn't done in the light of day. It was done behind closed doors, which was partly why we asked for jurisdictional discovery. We know that Locke and Burnett attended, well, in the complaint, as of the filing of the complaint, we knew it was one meeting. It's not for purposes of today's hearing what we've learned since then, but we know that they were part of it. But the meetings were not in Arizona. Correct. The meetings were with Arizona residents with the purpose of ending Arizona litigation, and they were also with the purpose of defaming my client. And that defamation was published to Arizona residents. Meaning the eparchy, is that what it's called, in Arizona? Correct. And I've heard of eparchy and aparchy, so... You know, Walden looks and tells us that we should be looking at the connections between the defendants and the form and the litigation. And it's clear that these defendants engaged in a concerted effort to stop Arizona litigation, because it was going to uncover issues with the health plan that they had helped create, and possibly uncover funds that should be returned to the aparchy of Phoenix. Their efforts were designed to end the lawsuit in Arizona. They were designed to stop a contractual relationship that existed in Arizona. And because, I mean, obviously we've got cases where you can have multiple jurisdictions. I agree that I think Florida would also be an available jurisdiction, because of the financial harm to my client. But Arizona is also a proper jurisdiction. We don't need to have the brunt of the harm occur in Arizona to bring a claim in Arizona. Arizona has, just like the case law... It's your basic intention that you began with this, but that it matters what the tort is and that where the tort is, defamation at least. The question is where the reputational injury was, i.e. where this reputation was tarnished, and not necessarily where the economic injury was. Correct. And I think that... And the district court insisted that because he was in Florida and his economic injury was in Florida, that was the end of the story. Correct. So we do have a fair number of cases about defamation and libel. We don't have... I don't know of cases specifically about intentional interference with contract. Do we have cases? None that I could find. I was not able to locate any precedent or binding precedent on this. We do have a case... And I forget if it's Oregon. I may be stating that wrong. It's a federal court case in another circuit. Definitely not binding on this court, obviously. But when you look at Walden and the other case law that tells you to look at the tort itself, if we're looking at the tort of intentional interference with contractual relationships, then we look at the contract. We look at there's two parties to a contract. We look at where it was performed, where it was signed, where the relationship was ended. And all those point to both... You could say Arizona or Florida because you've got two parties. And I think when you're looking at the tort of intentional interference, Arizona is a proper forum for a specific jurisdiction. And I see that my ten minutes are up. Thank you very much. Good morning, Your Honors. My name is James Niehaus. I represent Bishop Milan Locke in the Byzantine Catholic Eparchy of Parma. I'm splitting time with Ms. Llewell who represents the other appellees. Could you please put the time on the clock, please? Go ahead. Thank you. Thank you. I think it's important in this case to look at what the amended complaint actually says about the appellant's claims. Now, the amended complaint makes very few factual allegations about Bishop Locke. At best, the amended complaint alleges that Bishop Locke made some negative comments about Mr. Burry at a meeting in Texas with Cardinal Sandry. Now, even if that were true, and it's not, but even if it were true, those facts do not create a substantial connection with Arizona. In fact, the amended complaint admits. Wait, but the negative complaint, I don't have a complaint in front of me, but did the negative comments not concern his actions with regard to the church entity in Arizona and the fact that they shouldn't be using him as a lawyer in Arizona and that they should fire him from the Arizona proceedings and so on? Do we know any of that? There are some allegations in the complaint that suggest comments like that were made. They're not specifically attributed to Bishop Locke, but there's allegations that comments like that were made. But I think it's also important to take a look at what paragraph 92 of the amended complaint states. It says specifically, defendants' repeated efforts were rebuffed by Bishop Pacek in the Phoenix Eparchy and the federal case continued. That's important. Defendants' repeated efforts were rebuffed. In other words, even though they made these negative statements, Bishop Pacek ignored those statements. Bishop Pacek, according to the amended complaint- But isn't that a merits issue as to whether their reputation was sufficiently sullied to support the cause of action? Well, I think before you can drag my client across country to defend a lawsuit in Arizona, this court's axiom decision makes pretty clear there has to be some relationship between the cause of action and the underlying conduct. Your position is that there's no causal relationship between the defendants' efforts because they were rebuffed. That's correct. There's no causal relationship. Counsel, why aren't your arguments going to 12b-6 instead of jurisdiction? You didn't file a motion to dismiss on 12b-6 insufficiency of the allegations grounds, correct? You only filed it for dismissal based on jurisdictional grounds. As I look at the complaint, it is pretty bare bones. But it does establish a connection to Arizona in that, for example, looking at paragraph 69, defendants Scurla, Locke, and Burnett began a campaign of improperly interfering in the contract between the Phoenix Eparchy and the plaintiff. So to the extent that there's any specificity in the complaint at all, it centers around this contract that Bury Law had with the Phoenix Eparchy and the ways in which the plaintiffs claimed that that contract was undermined or interfered with. So that's the connection to Phoenix right there. It seems to me that to the extent you're saying these are really bare allegations, aren't those 12b-6 questions? Well, certainly they're 12b-6 questions, but they also go to the question of is there a relationship between the claim, intentional interference, and the alleged conduct of my client? Now, if you read further... That's exactly right, and that's a 12b-6 question. Yeah, for jurisdictional purposes, they need a connection and a direction at Arizona. And so that hook is essentially with this contract that they had with the Phoenix Eparchy. Tell me why that's not so. Because if you read on in the complaint, the amended complaint makes clear that what happened is after these allegedly false statements were made, Bishop Pazak ignored them. Bishop Pazak returned to Arizona. He did not dismiss the lawsuit. He continued with the lawsuit. Then what happened is the Pope removed Bishop Pazak and appointed Bishop Olmsted as the Apostolic Administrator. The complaint says Bishop Olmsted is the individual who terminated the contract with Mr. Burry, and it was Bishop Olmsted who dismissed the lawsuit. There is no allegation in the complaint that any of the defendants made any statements at all to Bishop Olmsted. So there's no connection between the dismissal of the litigation, the termination of the contract, and any of the conduct engaged in by any of the defendants, including Bishop Locke. The complaint simply does not allege any relationship between the conduct and the cause of action. There's no allegation in the complaint that any of the defendants made any statement to Bishop Olmsted. Now, Ms. Mayrose may respond saying, oh, well, they went up the chain of command to the Pope. But then what you're basing jurisdiction on is an Ohio resident making a statement to someone in Italy about a resident of Florida, and that does not give rise to jurisdiction in Arizona. Clearly, we have a basis to dismiss for failure to state a claim. We've got a basis to dismiss. Can I ask one other question? Focusing on defamation, defamation is a reputational injury, and the question is, where was the reputation injured? And I don't think that it necessarily requires that the contract have been breached. Its reputation still could have been injured by the things that were said. And connected to that is, why isn't everything you're saying a reason why jurisdictional discovery shouldn't have been granted? To get behind some of this. I think the reason is you have to do more than have these, you know, extremely bare bones allegations that don't show a connection with Arizona. And then, oh, now we can engage in- Well, they show a connection with Arizona. They show that his reputation, the allegation is that Latch and the other Latch defendants were at least somewhat involved in repeating scurrilous defamatory statements, including to the Phoenix Eparchy and to others in the Catholic Church, all of which were injuring his reputation in Arizona. Except there's, the evidence is that it didn't injure his reputation in Arizona. You're saying, well, that the bishop, who was the bishop at that time, didn't cancel the contract, but that doesn't suggest that his reputation wasn't injured, especially if it's per se injury. There has to be something more than just the conclusion. Right, and that's why, so why isn't that why there should have been discovery? Well, because in order to put somebody to the expense of discovery, there, I mean, this goes back to Twombly and Iqbal, where, you know, the Supreme Court- Twombly and Iqbal speak to 12b-6. What's that? Yes. And what they say is- So let me make sure that I've got the record right. You didn't move for 12b-6 dismissal, right? Not yet, that's correct. It has to have the sufficiency of the allegations on the defamation claims in particular. That's correct. And if we moved for 12b-6, we'd also move for a statute of limitations, which has already been litigated in Ohio, and Bury has lost on that in Ohio. The court in Ohio has ruled, has granted judgment on the pleadings on the basis of statute of limitations in Ohio. So once that judgment becomes final, we'll be moving to dismiss on reis judicata grounds. In order to do that, you have to appear and give up your personal jurisdiction question, don't you? And wouldn't that be a more efficient way to proceed? I don't think we have to appear. We would be moving to dismiss this appeal on reis judicata grounds once that judgment becomes final. Well, but you still have to appear, so then you're appearing here, if you're filing a merits motion. Well, no, I think the law allows us to raise a statute of limitations defense along with jurisdictional defense. You may be right, I don't know. Mr. Nauhaus, may I ask a question of you? Yes. Is it your position that the allegations, the factual allegations of this complaint state only that the defendant's efforts, in other words, with defamation or interference with contractual relationships, were heard by Bishop Pacek in Phoenix? Nobody else in Arizona heard that? The complaint does not identify anyone else who heard any of the alleged defamatory statements. It references others. I thought in general it says to feed us that parking. Yes, I was saying it doesn't identify anyone specifically. It just makes a general allegation that others, the statements were made to others. You know, that's a conclusory allegation. Well, no, it isn't. It just means that they were made to other people whose names aren't listed. That's a fact. Well, I don't think it's sufficient just to say, you know, and others may have heard it. That shouldn't be sufficient. They don't say that. They say others did hear it. Okay. Your time is up by three minutes. You're over three minutes, so thank you very much. Thank you. Ms. Luell. No, you're muted. This happens at least once an argument. Every day. I'm sorry, Your Honors, and I kept telling myself I wasn't going to do that, so I apologize. I wanted to say good morning to you and thank you for the time. May it please the court. Well, let me begin by saying that I noticed that Mr. Niehaus, Nickhaus, did not defend the district court's position. Are you defending the district court's position? I am. Because the injury, because Mr. Burry is in Florida and that's where he lost his business, that's the end of the story? Yes, Your Honor. I respectfully submit that the district court's decision was correct. When you look at the callers … But it can't be correct under the case law with regard. There are many cases, particularly defamation and libel cases, in which the plaintiff is not from the area in which the asserted defamation occurred. So how can that be right? Your Honor, the main case that I have looked at is the Keaton case, which I'm sure the court has looked at, which was issued the same day as the Calder case. And Keaton is very distinguishable. It's distinguishable because you're dealing with a national publication that is selling magazines at a large scale. In Keaton, you had a situation where Hustler, the magazine, had sold 10,000 to 15,000 copies of magazines in New Hampshire. Well, what difference does that make? I mean, the defamation here was more narrow because it was a more narrow issue. But if he can make out the other elements of defamation and reputational injury with damages to him, then he has the same problem. I mean, we're in a national economy at this point with regard to legal services as well as other things. So what difference does that make? Your Honor, I see two differences. First of all, a part of Keaton, at least the way that I read it, is that there was an expansion to allow jurisdiction over a defendant because they actually did general business in that state. In this particular case, the allegations of the complaint are that there were just a few communications to a very specific audience. It wasn't administered to Arizona residents at large. And that ties into my second point of why there's a distinction. It's because the reputational harm was targeted at an individual. This individual is a Florida resident. Every case that I've looked at so far, except for Keaton, the plaintiffs were residents of the forum state. Keaton's the only one that I have seen that is different. And again, that gets back to the large-scale operations. If you look at Calder, Calder is the companion case with Keaton. And in that particular case, there are... Are you saying it's the only Supreme Court case or the only case? The only Supreme Court case that I have found... Yes, but there are other cases which are not Supreme Court cases. I did not find any cases in my review, but maybe I'm missing some, Your Honor, where there was a defendant or a plaintiff that was not a forum state. I think it's key, when you look at the specific allegations in this case, is that it's alleged that there are targeted communications to a non-party, which is the eParkey of Phoenix. And the only harm that's alleged is alleged financial harm and reputational harm. And I think that the district court was correct when they relied on PICO and some of those other cases that talk about the individual harm being portable. And I don't think that's enough of an anchor to make this litigation end up in Arizona. And again, you get back into that difference with Keaton, because Keaton, there was large-scale operations, the defendants were making a lot of money. This is a completely different situation, and so there's less of a compelling reason to find an anchor in a non-forum state for a plaintiff that doesn't reside there. I also would submit that this case is very similar to Bancroft. In Bancroft, you have a situation where you have, I believe, a New York resident who was the plaintiff who was impacted by activities and communications that were sent to Virginia. But ultimately, the plaintiff had offices in California, the case was brought in California, and there was jurisdiction found because the effects of the targeted actions against the individual were felt in California. In this particular case, the effects of anything that was allegedly done by my client would have been in Florida, because that's where Mr. Burry is from and that's where his law firm is from. And I think that another thing I would point out is that the district court was absolutely correct in saying this focus on the actual underlying litigation, the arrest of litigation, is kind of a red herring, because Mr. Burry does not have standing to assert any harm related to that litigation. His sole harm that he's alleging is reputational and financial harm, which again gets back to the fact that he's a Florida resident. Does he practice in Arizona? Does, but as your honors have alluded to, it's a national economy, we all are interconnected. I can practice, I'm in Milwaukee, Wisconsin right now, I'm practicing technically in Arizona in front of the Ninth Circuit. So to have, to find that there would be... Actually, you're practicing technically in California in front of the Ninth Circuit. Well, thank you, your honors, for this opportunity. But to allow for personal jurisdiction based on a lawyer who can go into many different states, if not all the states, simply because they represented a client who was within the... But that's not, the jurisdiction isn't because he practiced in Arizona, it's because he was defamed in Arizona. The jurisdiction is... His reputation was injured in California, and that seems to be Keaton directly. But Keaton was also different because there was a single publication rule which would allow for all of those other liable cases to come in. And it was also a form of last resort because there were statute of limitations issues where this is something that's different. This is something where you have a plaintiff who can bring claims in other jurisdictions. And so the equities don't really play in the same way as they did in Keaton. I would also just echo what Attorney Niehaus had said about the causation prong in this. And that there really isn't any causal connection when you look at it from a broader view that the bishop that replaced the former bishop instructed the end of that particular lawsuit. And furthermore... Why was the first bishop replaced? Under the direction of the pope, which... And that is alleged to be connected to the intentional interference with contract notion. And it happened... He was replaced in Arizona, right? He was replaced in Arizona, but he's not a party to this action. I'm just saying he's not a party. But the allegation is that, as I understand it, is that Bury was defamed in Arizona. That when the Arizona bishop would not dismiss the litigation, the defendants went to Rome, I guess, and got the... And further defamed Bury, I guess we would say, but that maybe it wasn't Rome. But then got the bishop in Arizona replaced, which was for the purpose of interfering with the contract and carrying out the defamation, essentially. Is that not the overall story that's being told? There's one other part of it. I don't believe that any bishop or archbishop can tell the pope what to do. And so that's where the other facet of the causation prong comes in, is that you can't have that causal connection. I believe there's a case that involves the distribution of blood that is cited in the briefs. And that dealt with... It was something beyond the control of our defendants. And that's where you don't... You can't get the but-for prong of this analysis. And again, that's something that's... And there's no connection between the defamation of Bury and the interference with the contract and the new head of the epiparchy, i.e., that he was simply being... He was basically the way of carrying out this, in Arizona, the scheme to interfere with the contract and to further tarnish Bury's reputation? Your Honor, I would, again, just reiterate... That all happened in Arizona. I mean, it doesn't necessarily depend on the reputational injury in Rome with the... I mean, it's not a question of telling the pope what to do. It's a question of why did he do what he did, presumably because he heard certain things. And ultimately, it gets back to what is the harm. The harm is the reputation that belongs very specifically to Mr. Bury and the Bury law firm. It does not have the same implications as Keaton where it's impacting the Arizona residents at large. It's a very specific audience. And to apply jurisdiction based solely on that just is... Okay. Your time is up, so thank you very much. Thank you. All right. Ms. Meros, you have a little time. Thank you, Your Honor. I'll just briefly address some of the issues brought up by opposing counsel. I do feel like, Your Honor, I understand the but-for causation. I think I will add to that that it's important to note that there were two attorneys retained by the Apartheid Phoenix, Susan Martin and Mr. Bury.  So it's clear that the comments made by the defendants in this case are what led to his termination, because they didn't terminate both lawyers that brought the lawsuit. It was just Mr. Bury, and that's alleged in the complaint. What about the issues about the Locke defendants and their connection to all this? It's a little flimsy. You know, Your Honors, I would like to have more allegations against the Locke defendants. And since Mr. Niehaus brought up the litigation in Ohio, I'll bring up the litigation in Florida, where we have discovered additional allegations that should this get sent back down to the court, I will be amending my complaint to add additional specific allegations against Mr. Locke. But, again, this is why we moved for jurisdictional discovery, because we didn't know every meeting that these three defendants had with the Apartheid Phoenix. It turns out there were others in other states. Did you ask to amend the complaint originally? We did amend the complaint after the first motion to dismiss was filed for jurisdiction. We asked for jurisdictional discovery after that. The jurisdictional discovery was denied. And I understand that we would be amending the complaint a second time to add sufficient or to add additional allegations against Locke. But I do stand ready and willing to do that. Okay. You have a little more time, but if you're finished, that's fine, too. Sure. The only thing I'll go back to is I think the court understands that the Keaton analysis offered by opposing counsel is not what Keaton says, and that being a national publication is not the relevant aspect of it. Do you have a case other than Keaton? I know there are a lot of cases that say that the reputational injury is where the events occurred. But do you have another case in which the plaintiff was not from the forum state? So that was the one I was going to look for earlier. So it was an Oregon District Court case, Benaron v. Simiak, 434 F. Supp. 3rd, 907. A 2020 case. In that case, oh, actually, I may have that wrong. Because her daughter went to a university. Nope, strike that. Sorry, that's a wrong case. But I will point out that, and I believe it's Walden says, there is no requirement regarding the plaintiff's location. There is no separate jurisdictional element that a plaintiff must be in the forum. And I think Walden actually points us to the fact that we need to look at the defendant's connections with the forum, not the plaintiff's. You see in a number of cases that say, you know, we have to look beyond the relationship between the plaintiff and defendant, and the relationship between the plaintiff and defendant cannot be the only connection to the forum. It has to be the defendant's connection to the forum. So I actually think Burry's location, as a resident of Florida, is irrelevant for purposes of establishing an Arizona jurisdiction. And I would point out to the court the Boswell v. Phoenix newspaper case. That picks up on the court's notion about the defamation per se. We don't have to prove damages. We don't have to prove that Bishop Pazak fired Burry to have damages to his reputation. Obviously, the longer this goes on, you know, they still have not paid his attorney's fees. We still have the issues of the comments made in Phoenix. And with respect to the fact that there are other jurisdictions, that goes to the idea of reasonableness. It doesn't go to whether or not we've established personal jurisdiction here. With that, if there's no other questions, I will rest. Thank you very much. And thank you both for your argument. The case of Burry Law v. Gerla is submitted.
judges: BERZON, BEA, NGUYEN